UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

J&J SPORTS PRODUCTIONS INC.,

    Plaintiff,

v.

NIKOLAOS J. TSOULOUHAS, et al.,

    Defendants.

C08-695Z

ORDER

THIS MATTER comes before the Court on plaintiff's motion for default judgment, docket no. 13. Having reviewed the papers filed in support of the motion, the Court enters the following Order.

**Background**

Plaintiff J&J Sports Productions, Inc. is a closed-circuit distributor of sports and entertainment programming. Gagliardi Decl. at ¶ 3 (docket no. 13-5). In this action, plaintiff alleges that, on May 6, 2006, defendant Cascade Restaurant and Pizza Inn, a commercial establishment located in Mount Vernon, Washington, exhibited a portion of a program titled "Danger Zone: The Oscar De La Hoya vs. Ricardo Mayorga World Super Welterweight Championship Fight," to which plaintiff had exclusive nationwide distribution rights and for which defendants did not pay plaintiff a sub-licensing (pay-per-view) fee. Complaint at ¶ 12 (docket no. 1); Gagliardi Decl. at ¶¶ 3 & 7; Yell Affidavit, Exh. 2 to Huppert Decl. (docket

ORDER 1–

no. 13-6). Plaintiff has filed declarations indicating that copies of the summons and complaint were delivered to Kathy Tsoulouhas, the owner and/or manager of Cascade Restaurant and Pizza Inn and spouse of defendant Nikolaos Tsoulouhas, on two occasions at different locations, namely the Mount Vernon address of the restaurant and a Bellingham residence. *See* Declarations of Service (docket nos. 3, 5, & 6). Defendants have not appeared or filed a responsive pleading. Upon plaintiff's motion, the Clerk entered default against both defendants. Order (docket no. 11).

**Discussion**

Plaintiff alleges that defendants have violated both 47 U.S.C. § 553 and 47 U.S.C. § 605, and seeks statutory damages under each statute. Although the Ninth Circuit has not yet addressed the issue, the Third and Seventh Circuits, as well as a District Court in the Tenth Circuit, have concluded that the remedies of Sections 553 and 605 are mutually exclusive. *See* *Kansas City Cable Partners v. Espy*, 250 F. Supp. 2d 1296, 1302-03 (D. Kan. 2003) (holding that "§ 605 applies to radio signals . . . transmitted through the air, and § 553 applies to radio communications transmitted via a wire or cable system" (citing *TKR Cable Co. v. Cable City Corp.*, 267 F.3d 196 (3d Cir. 2001), and *United States v. Norris*, 88 F.3d 462 (7th Cir. 1996))); *see also* *Garden City Boxing Club, Inc. v. Stone*, 285 F. Supp. 2d 447, 452 (D. Del. 2003) ("'Congress created § 553 to address an enforcement gap created by the 1968 modification of § 605, which rendered § 605 applicable only to satellite transmissions insofar as they are actual airborne transmissions. . . . Once a satellite transmission reaches a cable system's wire distribution phase, it is subject to § 553 and is no longer within the purview of § 605.'" (quoting *TKR Cable*, 267 F.3d at 205-07)). In *Stone*, Joseph Gagliardi, who is currently the President of J&J Sports Productions, Inc., provided an affidavit that the defendant in that case sought to strike. 285 F. Supp. 2d at 453. Mr. Gagliardi is therefore presumed to know of the *Stone* decision, and plaintiff's failure to cite this authority or to acknowledge the case law requiring an election between the statutes in question constitutes

ORDER 2–

questionable behavior, especially in light of the Delaware District Court's previous admonition. *See id.* ("Even more disturbing, however, is the parties' apparent lack of research on the interplay of §§ 553 and 605, and the Third Circuit precedent on this matter, since neither party cited nor discussed the very relevant *TKR Cable* decision.").

Although plaintiff might have offered the De La Hoya / Mayorga program via both cable and satellite transmission, plaintiff has provided no evidence concerning the format in which defendants allegedly intercepted or received the communication. Thus, the Court cannot determine which of the statutes, Sections 553 or 605, apply in this case. Although both statutes authorize an award of statutory damages, they provide different limits. Section 553 permits recovery of not less than $250 and not more than $10,000, or up to $50,000 in the case of willful violation, while Section 605 sets statutory damages at a minimum of $1,000 and a maximum of $10,000, or $100,000 for willful violations. *See* 47 U.S.C. §§ 553(c)(3)(A) & (B) and 605(e)(3)(C)(i) & (ii). Because plaintiff has not made an adequate showing concerning which of the two statutes was violated, the Court will award damages only under the statute with lower limits, namely Section 553.

Plaintiff asserts that it is entitled to statutory damages at the maximum amount for willful violations. Plaintiff, however, presents no evidence other than the single broadcast on May 6, 2006,[1] during which its investigator observed the presence of only 24 or fewer patrons, none of whom were required to pay a cover charge. Yell Affidavit at 1. Plaintiff offers no estimate of the residential rate for the program at issue, but assuming it was as much as $100 per person, the most that plaintiff can support in actual damages is $2,400. *Compare Kingvision Pay-Per-View Ltd. v. Villalobos*, 554 F. Supp. 2d 375, 382-83 (E.D.N.Y. 2008) (adopting a residential rate of $54.95 per customer). An award of statutory damages in the amount of $50,000 or $100,000 is simply unsupported by this record.

---

[1] Plaintiff has provided a photograph of a sign purporting to advertise the broadcast at issue, but plaintiff has offered no foundation for the evidence, for example when and where it was taken, and the Court assigns it minimal probative value.

ORDER 3–

*Compare id.* at 383-84 (recognizing that repeated violations, advertising for the pirated broadcast, charging a cover fee, or charging a premium for food and drinks are factors indicating willfulness, and awarding "enhanced" damages of $10,000 "as a deterrent for future violations" based on evidence that the defendants "pirated at least one other event").

Moreover, although intercepting a signal and exhibiting a program without authorization, as well as defaulting in litigation of this nature, constitute evidence of willfulness, *id.* at 383, a variety of innocent explanations might exist for defendants' behavior. Plaintiff itself acknowledges that a commercial establishment might inappropriately obtain pay-per-view programming at a residential rate, Gagliardi Decl. at ¶ 8, and at least one previous case has revealed circumstances other than willfulness that might explain such an arrangement. *See Stone*, 285 F. Supp. 2d at 449 (finding that a genuine issue of material fact concerning willfulness was created by defendant's averment that a residential account was created inadvertently by a Radio Shack employee when defendant provided a personal credit card and associated home address to complete the installation of the satellite equipment at issue). Absent additional evidence of defendants' disregard for federal law, the Court is unpersuaded that defendants' single violation was willful.

In addition to the statutory damages described earlier, plaintiff also requests $1,500 in damages for the tort of conversion, $750 in attorney's fees, and $445 in costs. With regard to the damages for conversion, plaintiff provides absolutely no proof to support its estimate. As to attorney's fees, plaintiff offers only a parenthetical in counsel's declaration, indicating four hours spent at a rate of $150 per hour, and fails to explain what work was performed, who performed the work, and what legal experience the individuals who performed the work have. *See Villalobos*, 554 F. Supp. 2d at 384-85 (reducing the attorney's fees requested because, although counsel detailed the work done, she failed to identify the attorneys who worked on the matter or their experience level). The Court notes that it previously dismissed this case after counsel failed to comply with the Order requiring a joint status report and then

ORDER 4–

did not respond to the Order directing counsel to show cause for such failure. *See* Minute Order (docket no. 4); Order (docket no. 7). To the extent that plaintiff has included within the estimate of time expended on this case the effort spent preparing its motion to vacate dismissal, the request is improper. The Court has reviewed the filings in this case that required counsel's attention, and has arrived at an amount it believes reflects a reasonable attorney's fee. Costs will be awarded.

**Conclusion**

For the foregoing reasons, plaintiff's motion for default judgment, docket no. 13, is GRANTED IN PART and DENIED IN PART. The Court awards plaintiff the following amounts:

(1) Statutory Damages for Violation of 47 U.S.C. § 553: $2,400
(2) Damages for Tort of Conversion: $ 0
(3) Attorney's Fees: $ 500
(4) Costs: $ 445
TOTAL: $3,345

The Clerk is directed to enter judgment in favor of plaintiff and against defendants Nikolaos J. Tsoulouhas and Cascade Pizza and Italian Cuisine Restaurant III LLC doing business as Cascade Restaurant and Pizza Inn III in the amount of $3,345.00, and to send a copy of this Order to all counsel of record.

IT IS SO ORDERED.

DATED this 23rd day of December, 2008.

*Thomas S. Zilly*
Thomas S. Zilly
United States District Judge